O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN DAVIS, an individual; CAROLE DAVIS, an individual; LONDON ROWLAND, an individual; PATRICIA GOMEZ, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>7253 VARIEL AVE, LLC; LEEDS PROPERTY MANAGEMENT, INC., a California corporation,<br><br>    Defendant. | Case No. CV 15-06784 DDP (GJSx)<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Dkt. No. 10] |

Presently before the Court is Defendants' Motion to Dismiss. (Dkt. No. 10.) After considering the parties' submissions, the Court denies the motion.

**I.   BACKGROUND**

Plaintiffs are all former and current residents of apartments located at 7253 Variel Avenue, Canoga Park, California. (Compl. ¶ 5.) Defendant 7253 Variel Ave, LLC owns the apartments and Defendant Leeds Property Management, Inc. ("Leeds") manages the property for LLC (collectively, "Defendants"). (Id. ¶ 11.)

**A. Davis Plaintiffs**

Plaintiffs Robin Davis, Carole Davis, and London Rowland ("Davis Plaintiffs") are members of an African American family who lived together at the 7253 Variel Avenue apartment building. (Id. ¶ 6.) Carole Davis "suffers from chronic heart failure and heart diseases, hypertension, and physical and psychological disabilities which impair her mobility and ability to walk, work or take care [of] herself," so she uses a wheelchair and walker to get around. (Id.) Her daughter Robin Davis and granddaughter London Rowland "provide[d] support and care to Plaintiff Carole Davis during their tenancy." (Id. ¶ 7.) The Davis Plaintiffs moved into 7253 Variel Avenue in December 2011. (Id.)

According to their complaint, in 2013, the Davis Plaintiffs "observed that the mold and insects and roaches infestation in their apartment was becoming unbearable." (Id. ¶ 21.) They claim they alerted Defendants, but Defendants failed to act. In late 2013 or early 2014, Defendants had a new property manager at 7253 Variel Avenue, and Plaintiffs again complained about their worsening housing conditions. (Id. ¶ 22.) Plaintiffs state that the new manager, Karla Canizales, personally observed black mold in the apartment, but also photographed Carole Davis's companion dog. (Id. ¶ 23.) Plaintiffs allege that they contacted the County of Los Angeles Department of Public Health Services about the housing conditions, and the County ordered Defendants to fix the property. (Id. ¶ 24.) However, according to Plaintiffs, Defendants did not fix the conditions and instead ordered Plaintiffs to fix the apartment themselves. (Id. ¶ 26.) Defendants also gave Plaintiffs "a 3-day Notice to Quit or get rid of their two pets," including

2

the companion dog that helped Carole Davis with her disability. (Id. ¶ 25-26.)

In early 2015, Plaintiffs allege that Defendants attempted to evict them as "part of the campaign of threats and coercion" directed at them in retaliation for raising issues with their housing conditions and Carole Davis's treatment as a disabled woman. (Id. ¶ 28-29.) The unlawful detainer suit was dismissed against Plaintiffs, but Plaintiffs allege the harassment continued. (Id.) Plaintiffs allege that the property manager would only prohibit minor children from Plaintiffs' household from playing in common areas, and other children who were not African American were not so forbidden. (Id. ¶ 30-33.) The property manager also followed Plaintiffs' children around and took their photographs without consent. (Id. ¶ 33.) Plaintiffs were also prevented from using common areas for parties, unlike non-African American tenants, and when Plaintiffs held a barbeque, Defendants' property manager called the police. (Id. ¶¶ 34-35.) Plaintiffs allege the property manager also called the police when Plaintiffs held a birthday for their one-year-old grandson. (Id. ¶ 36.)

Plaintiffs also claim that their visitors were not allowed to be "seen anywhere in the common areas" of the apartments, unlike the guests of non-African American tenants, that they received unwarranted "warning notices" about repairs from Defendants, and that they were continually harassed by Defendants' agents and property managers. (Id. ¶¶ 37-39, 41.) Further, Plaintiffs allege that Defendants' property manager "told non-African American tenants at the Subject Property that Defendants would eventually evict all African American tenants, especially Plaintiffs and those

associated with them like Plaintiff Gomez, because Defendants do not like having African Americans as tenants at the complex and because Plaintiffs complained a lot and that Plaintiffs were making several demands for the repair of unsafe, dangerous and uninhabitable conditions in their dwelling unit." (Id. ¶ 40.)

### B.   Plaintiff Patricia Gomez

Plaintiff Patricia Gomez ("Gomez") is a Latina woman who "suffers from severe spinal cord injury and physical disability, which impairs her mobility and therefore [she] permanently uses a wheelchair to move about." (Id. ¶ 8.) She is friends with the Davis Plaintiffs and lived at Defendants' property from January 2010 until March 2015. (Id. ¶¶ 6, 42.)

When Gomez moved to 7253 Variel Avenue, she requested a parking spot closer to her apartment as a reasonable accommodation of her disability. (Id. ¶ 42.) She did receive the spot for an additional charge of $50 per month; when Gomez protested, she was threatened with a farther away spot. (Id. ¶ 43.)

Further, Gomez also complained about uninhabitable conditions such as "cockroaches and severe mold infestation around the walls, tiles, cabinets, floor, and toilet in her apartment," but Defendants failed to fix these conditions. (Id. ¶ 44.) By 2013, Gomez was constantly sick, having severe headaches, and developing rashes, which Gomez learned from her physician was caused by the mold in her apartment. (Id. ¶ 45.) When Gomez again informed Defendants of this problem, nothing was done.

In December 2013, Gomez alerted Defendants about "unsafe and uninhabitable conditions" in her apartment, such as "non-functioning of the ceiling fan and air conditioner, cracks in walls

and around kitchen and bathroom sinks, [and] defective toilet and bathtub," but still Defendants failed to fix these problems. (Id. ¶ 46.)

Defendants' property manager instead would harass Gomez and make discriminatory remarks about Gomez's disability, such as saying that she should park her car "out of the way of 'normal' human beings" and that she "was no better than a baby that needed to be carried around." (Id. ¶¶ 47, 52-55.) Further, when Gomez complained to the County about the uninhabitable conditions in her apartment, Defendants did not actually fix the problems and "merely painted over the black patches or mold . . . and refused to carry out proper repairs or fix the defective conditions." (Id. ¶ 51.) Defendants' property manager also harassed Gomez and her minor child by knocking on her door late at night, following the child around and taking pictures of her, and stating that other tenants were complaining about the child's loud voice in the apartment, while other tenants denied making such complaints. (Id. ¶¶ 57, 63.)

Gomez alleges that the property manager "often warned Plaintiff Gomez to stop associating with the Davis Plaintiffs or face the consequences of Plaintiff Gomez disobeying her instructions." (Id. ¶ 64.) As a result of all this alleged harassment, Gomez left the apartment building. (See id. ¶¶ 59, 67.) Gomez still visited the Davis Plaintiffs, but the property manager called the police on Gomez when she visited, and even filed a restraining order against Gomez. (Id. ¶¶ 64, 68.)

///
///

5

**C. Procedural History**

In September 2015, Plaintiffs filed their complaint alleging that Defendants and Defendants' property managers and agents discriminated against Plaintiffs on the basis of their race and disability, as well as their association with each other. (Id. ¶¶ 69, 76.) Further, Plaintiffs allege they were discriminated and retaliated against for exercising their rights to safe and habitable housing. (Id. ¶¶ 69, 71.) Thus, Plaintiffs make claims under the federal Fair Housing Act ("FHA") and California's Fair Employment and Housing Act ("FEHA") as well as Title VIII of the Civil Rights Act and California's Unruh Civil Rights Act. (Id. ¶¶ 71, 73.) Additionally, the complaint alleges causes of action for unfair business practices and negligence. (Id. at 22-25.)

Defendants filed a Motion to Dismiss, claiming that Plaintiffs have failed to state a claim and that the Court should strike the demand for punitive damages. (Dkt. No. 9, Def. Mot. Dismiss.) In support of their Motion, Defendants make numerous requests for judicial notice. (See Dkt. No. 10, Def. Req. Judicial Notice ("RJN").)

**II. LEGAL STANDARD**

A 12(b)(6) motion to dismiss requires a court to determine the sufficiency of the plaintiff's complaint and whether it contains a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. See Sprewell v. Golden State Warriors, 266 F.3d

6

979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

In order to survive a 12(b)(6) motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Dismissal is proper if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

**III. DISCUSSION**

    **A. Defendants' Request for Judicial Notice**

Defendants have requested this Court take judicial notice of five exhibits: (1) the unlawful detainer stipulation and judgment in a case between Leeds and Gomez; (2) a "Conciliation Agreement"

7

between Leeds and Carole Davis; (3) a lease agreement between Leeds and Robin Davis and London Rowlands; (4) Robin Davis's answer in a lawsuit between Leeds and Davis; and (5) official inspection reports from the Los Angeles County Department of Health. (See Def. RJN at 1-2, Exs. 1-5.) Plaintiffs object to these exhibits and urge the Court to not consider them at the Motion to Dismiss stage. (Pl. Opp'n at 9-10, 15-16.)

"On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings." MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). A court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1), (2).

Court orders are judicially noticeable matters and Defendants argue here that Exhibit 1 is a court order. However, Defendants' Exhibit 1 is unintelligible. The writing is so faint that the words cannot be made out, so it is unclear if the document supports Defendants' claim, namely that "contrary to her assertions in this Complaint, Defendant Gomez was not 'forced to involuntarily vacate the subject property.'" (Def. RJN at 2.) According to Plaintiffs, the stipulation "merely addressed, without any final judgment on the merits, that Plaintiff Gomez gives up possession of her dwelling so as to avoid further mistreatment by Defendants." (Pl. Opp'n at 14.) The parties thus dispute these facts, and from the face of Exhibit 1, there is no resolution of this dispute. Therefore, Exhibit 1 will not be considered by the Court.

1       Exhibit 2 is not signed by the alleged Complainant "Carol
2  Davis," and is not clearly connected to a "public record," so the
3  agreement will not be judicially noticed by the Court.
4       Exhibit 3, the rental agreement of Robin Davis and London
5  Rowlands, is not a public record document and so is not considered
6  by the Court.
7       Exhibit 4 is the answer of Robin Davis in a case by Leeds
8  against Robin Davis and London Rowland.  However, the Court finds
9  that the proffered record is not even a complete version because
10 the answer states that three pages are attached to it, but those
11 pages are not provided in the document given to the Court.
12 Further, it is not clear what all the writing on the page provided
13 states, and the fact that London Rowland did not remain at the
14 property into 2015 does not appear to be disputed by the parties.
15      Lastly, Exhibit 5 contains two official inspection reports by
16 the Los Angeles County Department of Public Health.  One report
17 states that the inspector observed mold in a "Unit 4," which may be
18 the Davis Plaintiffs' apartment.  Then, the later inspection report
19 states that "all items abated" from previous report.  However,
20 these reports are consistent with Plaintiffs' theory that
21 Defendants did not actually fix the uninhabitable conditions and
22 instead covered them up with paint and substandard work, or had the
23 Plaintiffs do the repairs themselves.  Further, there is no report
24 for Gomez's apartment.  Therefore, the underlying facts are still
25 disputed even taking into account these reports.

**B.   Defendants' Motion to Dismiss**

27      Defendants argue that Plaintiffs have failed to allege
28 sufficient facts to support their legal theories.  (See Def. Mot.

Dismiss at 9.)  Particularly, Defendants claim that there are no facts alleged in the complaint whatsoever to support any claim by Plaintiff London Rowland.  (<u>Id.</u> at 9.)  For Plaintiff Patricia Gomez, Defendants argue that she can make no "ADA parking claims" or claim that she was involuntarily evicted from her apartment because of a previous stipulated judgment.  (<u>Id.</u> at 9-10.)  Further, Defendants state that the complaint insufficiently supports a claim for discrimination based on Gomez's disability.  (<u>Id.</u> at 10.)  Lastly, Defendants ask the Court to strike the request for punitive damages because "Plaintiffs have not stated any underlying claim or cause of action in the Complaint that would support a finding at trial, on clear and convincing evidence, that Defendants have been guilty of oppression, fraud or malice."  (<u>Id.</u> at 11.)

   The problem with Defendants' arguments is that the arguments ask the Court to consider evidence that is inappropriate at a motion to dismiss, as explained above regarding the Request for Judicial Notice.  Further, Defendants are attacking the complaint's statement of facts and ignoring the pages of allegations in the complaint.  These allegations — taken as true, as the Court must at this stage — easily state claims for each plaintiff, particularly without more developed arguments by Defendants as to why this is not the case.  <u>See</u> <u>Parks Sch. of Bus., Inc. v. Symington</u>, 51 F.3d 1480, 1484 (9th Cir. 1995) (stating standard at motion to dismiss). As detailed in the Background section of this Order and Plaintiffs' Opposition to this Motion, the complaint sufficiently alleges facts supporting Plaintiffs' claims under California's FEHA and Unruh Act, as well as the federal causes of action under Title VIII and

10

the FHA. (See Pl. Opp'n at 10-13.) Plaintiffs' complaint alleges harassment and discrimination based on the Davis Plaintiffs' race, Carole Davis's and Gomez's disabilities, and the Davis Plaintiffs and Gomez's association with each other, as well as for retaliation based on Plaintiffs' housing complaints. And while Plaintiffs defend their negligence and unfair business practice claims in their opposition, there was no argument in the Motion against such claims, so the Court does not consider them challenged.

Lastly, the Court declines to strike the punitive damage request because the facts as alleged support a claim for punitive damages as a matter of law. See, e.g., 42 U.S.C. § 3613(c)(1) (punitive damages available under FHA); Cal. Gov't Code § 12989.2 (punitive damages available under FEHA).

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Dated: January 5, 2016

DEAN D. PREGERSON
United States District Judge